691 F.2d 332
 82-2 USTC P 9627
 UNITED STATES of America and Robert C. Rowe, Special Agent,
Internal Revenue Service, Petitioners-Appellees,
v.
FIRST STATE BANK and Christ Troupis, Respondents,
and
E. H. Stamberger, Intervenor-Appellant.
 No. 81-1495.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1982.
Decided Oct. 12, 1982.
Rehearing and Rehearing En Banc Denied Nov. 10, 1982.
 
 Clinton A. Krislov, Chicago, Ill., for intervenor-appellant.
 Gayle P. Miller, Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.
 Before SWYGERT, Senior Circuit Judge, ESCHBACH, Circuit Judge, and DOYLE, Senior District Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 The facts pertinent to this appeal may be summarized as follows. In January 1978, the Internal Revenue Service ("IRS") commenced an investigation of E. H. Stamberger's tax liabilities for the years 1975 and 1976. The investigation involved agents of both the Examination Division (civil division) and the Criminal Investigation Division of the IRS. The investigation was assigned to Revenue Agent Terrence Catalina and Special Agent William Bruton. In November 1979 Bruton was replaced by Special Agent Robert Rowe. In March 1980 Catalina was replaced by Revenue Agent Louis Van De Voorde.
 
 
 2
 Between October 1978 and August 1979 the IRS issued twenty-one summonses to various individuals or institutions regarding Stamberger's tax returns for 1975 and 1976. Stamberger received notice for only six of these summonses. In November 1979 Rowe issued the two summonses involved in this appeal. The first summons was issued to the First State Bank of Mendota, Illinois and its president, R. N. Shaffer, and the second was issued to Christ Troupis, Stamberger's personal attorney. Pursuant to section 7609 of the Internal Revenue Code, Stamberger caused the bank and Troupis to refuse to comply with the summonses.
 
 
 3
 In May 1980 the IRS instituted proceedings to compel enforcement of the two summonses. Stamberger intervened pursuant to section 7609(b)(1) of the Code. Stamberger's answer opposing enforcement alleged that: (1) the investigation concerning his civil tax liability for 1975 and 1976 had already been completed by the IRS and the summonses had been issued pursuant to an improper criminal investigation purpose; (2) the IRS had already possessed the information from the bank; (3) the documents held by Troupis were personal papers protected by the privilege against self-incrimination (personal papers privilege) and the attorney-client privilege; and (4) the summonses were issued pursuant to a second examination in violation of section 7605(b) of the Code.
 
 
 4
 In addition to opposing enforcement of the order, Stamberger requested discovery from the IRS. Stamberger served interrogatories upon the IRS and sought production of his entire IRS file. At this point, the case was referred to a United States magistrate. The magistrate ordered the IRS to answer the interrogatories but denied Stamberger's motion to compel production of the IRS file.
 
 
 5
 In October 1980 an evidentiary hearing was held before the magistrate. Rowe and Van De Voorde testified for the IRS. In addition to testifying on his own behalf, Stamberger called Troupis and Bruton. During the hearing, Stamberger attempted to introduce evidence showing that the documents held by Troupis were protected by the attorney-client and personal papers privileges. The magistrate refused to allow this testimony. The magistrate also refused to allow Stamberger to question the IRS agents concerning the twenty-one summonses which were issued between October 1978 and August 1979.
 
 
 6
 Following the hearing, the magistrate issued his findings of fact and recommendations. The magistrate specifically found that the investigation had not been completed, that there were both civil and criminal reasons for the issuance of the summonses, and that the summonses were properly issued in all other respects. He accordingly recommended that the summonses be enforced.
 
 
 7
 Upon de novo review, the district court adopted the magistrate's recommendations. Stamberger appeals from the final order of the district court. He has raised five issues on appeal:
 
 
 8
 (1) Stamberger was erroneously denied the right to prove at the enforcement hearing that the documents held by Troupis were protected by privilege;
 
 
 9
 (2) Stamberger was erroneously denied the opportunity at the enforcement hearing to inquire into the twenty-one summonses issued between October 1978 and August 1979;
 
 
 10
 (3) Based on the evidence produced at the enforcement hearing, the district court should have refused enforcement or, alternatively, permitted additional discovery by Stamberger;
 
 
 11
 (4) The district court erred in failing to award Stamberger the costs of subpoenaing Special Agent Bruton to testify at the enforcement hearing; and
 
 
 12
 (5) The district court erred in failing to award Stamberger the costs of contesting the Government's motion to disqualify Stamberger's counsel.
 
 
 13
 Only Stamberger's first argument has precedential value and will be discussed in this opinion. The other four issues fall squarely into previous holdings of this court and will be disposed of by unpublished order issued this date.
 
 
 14
 A summons may be challenged at an enforcement hearing on any appropriate ground, United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), including a claim of privilege. Indeed, the enforcement hearing is the most appropriate opportunity to challenge a summons. Subsequent challenges can only be undertaken by refusing to comply with an enforcement order and running the risk of contempt proceedings. Allowing the introduction of evidence at the enforcement hearing is therefore in the interest of judicial economy and fairness to the taxpayer. The right to introduce evidence, however, is not unlimited. We held in United States v. Kis, 658 F.2d 526, 539 (7th Cir. 1981), that once the IRS establishes a prima facie case in favor of enforcing a summons, a taxpayer must "... answer the Government's case through responsive pleadings, supported by affidavits, that allege specific facts in rebuttal." (Emphasis in text.) Legal conclusions or memoranda of law will not suffice.
 
 
 15
 The requirement that a taxpayer allege specific facts is an important one. It not only allows the district court to determine whether a hearing is necessary,[1] but it serves to sharpen the focus of inquiry where a hearing is mandated. A precise answer containing specific facts also assists the trier of fact in making evidentiary rulings, such as relevancy, during the course of the hearing. This too is in the interest of judicial economy (summons enforcement proceedings were intended to be summary in nature and concluded without undue delay). In the instant case, Stamberger failed as a threshold matter to place the question of privilege at issue.[2]
 
 
 16
 Stamberger did not allege specific facts in his answer which would establish the existence of a privilege. Stamberger simply stated that the documents sought were protected by privilege.[3] A blanket privilege claim of this type is not allowed by Kis. See also United States v. Davis, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981). The "specific facts" requirement of Kis mandates that the privilege must be asserted on a document-by-document basis. A taxpayer need not reveal so many facts that the privilege becomes worthless but he must at least identify the general nature of that document, the specific privilege he is claiming for that document, and facts which establish all the elements of the privilege he is claiming. These allegations must be supported by affidavits.
 
 
 17
 Stamberger argues that the summonses and the Government's affidavits provided sufficient specific facts to have placed the issue of privilege before the court: it was unnecessary for him to have been more specific where the summonses were directed to his attorney and sought the production of business documents. Stamberger's contention is based on the erroneous assumption that all of a taxpayer's business documents in the hands of his attorney are privileged. Not all business documents, however, are "personal papers" which would be protected in the hands of the client and the simple relationship of attorney and client does not always establish a privilege. For example, the fact that an attorney is in possession of a client's business documents does not prove that the documents were given to the attorney for the purpose of securing legal services.
 
 
 18
 The IRS summonses and affidavits were no more helpful to the district court than was Stamberger's general answer; they did not allow the district court to determine whether a valid privilege could be inferred from the alleged facts. This inference is a prerequisite for an enforcement hearing and the right to introduce testimony. See Kis, supra at 540. Unless a taxpayer alleges specific facts on a document-by-document basis which establishes all the elements of the specific privilege he is claiming, the district court is hampered in its ability to make an informed decision. Stamberger failed to place the claimed privileges at issue in this case and the magistrate properly denied the introduction of evidence concerning these claims.
 
 
 19
 Because we think a person who intervenes in a 26 U.S.C. § 7608(b) enforcement proceeding under 26 U.S.C. § 7609 and is served with a show cause order should, in fairness, be aware of the requirements mandated by Kis, an appropriate notice of those requirements shall be incorporated in the order. This direction is pursuant to our supervisory powers over district court procedures.[4]
 
 
 20
 The order of the district court is affirmed.
 
 
 21
 JAMES E. DOYLE, Senior District Judge, dissenting.
 
 
 22
 I draw from the court's opinion the understanding set forth in the following paragraph.
 
 
 23
 With respect to an IRS summons requiring the production of documents, it is always open to the taxpayer to appear before the IRS representative and to raise the claim of privilege with particularity, document by document. The taxpayer is free, alternatively, to raise the claim of privilege in the district court in response to an enforcement petition. In this way he or she can obtain a district court adjudication of the merits of the claim of privilege without running the risk of contempt proceedings. But the taxpayer may forego this opportunity without forfeiting the opportunity thereafter to raise the claim on the occasion of the judicially compelled conference with the IRS representative. When a taxpayer elects to raise a claim of privilege in the course of the enforcement proceeding, he or she must serve and file affidavits of a certain kind with his or her answer to the IRS petition. If he or she does not comply with this judicially imposed procedural requirement, the opportunity to obtain district court adjudication of the merits of the claim of privilege in the enforcement proceeding is waived. Only that opportunity is waived. The opportunity to raise the claim later before the IRS representative is preserved, as is the opportunity to obtain from the district court an adjudication of the merits of the claim in any contempt proceeding which may ensue. The merits of the claim of privilege will be evaluated no less favorably to the taxpayer in the course of such a contempt proceeding than they would have been evaluated in the course of the summons enforcement proceeding.
 
 
 24
 I concur in the promulgation of this set of procedural opportunities and requirements. I concur also in the majority's expressed desire that in the future taxpayers be apprised of these requirements. Most particularly, it is desirable that in the future each taxpayer be fairly warned that he or she will waive the opportunity for an adjudication of the merits of a claim of privilege during the enforcement proceeding unless a very precise and judicially created procedural requirement is met: namely, that the answer to the enforcement petition raise the claim of privilege and be accompanied by an affidavit or affidavits setting forth the specific facts on which the claim of privilege is based, document by document.
 
 
 25
 As against this broad area of agreement, the members of the majority and I disagree on a point of no significance to anyone but this particular taxpayer. The record on appeal contains no showing that he was fairly warned. In the absence of fair warning, I think it too harsh to deprive this particular taxpayer of his opportunity to obtain, in the enforcement proceeding, an adjudication of the merits of his claim of privilege. The majority opinion does not address whether this particular taxpayer was warned and, if not, whether the result is too harsh.
 
 
 26
 The record on appeal encompasses two separate IRS enforcement proceedings in the district court, both involving an IRS investigation into the tax affairs of E. H. Stamberger. One proceeding was to obtain district court enforcement of an IRS summons directed to a bank which was a "third-party record keeper," 26 U.S.C. § 7609(a)(3), and the other an IRS summons directed to Christ Troupis as a third-party record keeper. Troupis is a lawyer who had had dealings with Stamberger in connection with Stamberger's taxes for the years in question. But for the purposes of the IRS summons, his position is comparable to that of the bank, as a third-party record keeper. That is, the IRS summons was not directed to Troupis as a current attorney or alter ego of Stamberger. A copy of the IRS summons to Troupis was mailed by IRS to Stamberger, as required by § 7609(a)(1). Stamberger exercised his right to stay compliance by Troupis and Troupis did not appear at the time and place specified in the IRS summons addressed to him. On May 9, 1980, the IRS filed in the district court a petition in a proceeding in which only Troupis, the summoned third-party record keeper, is named as respondent. On June 3, 1980 IRS filed a motion for an order to show cause and such an order was entered the same day. It ordered Troupis, not Stamberger, to appear in district court at a time not specified to show cause why Troupis should not be compelled to obey the earlier IRS summons. Among other things, the order to Troupis stated that:
 
 
 27
 within five (5) days of service of a copy of this Order and the petition, exhibits and declaration upon them, the respondent, Christ Troupis, shall file and serve a written response to the petition supported by appropriate affidavit(s), as well as any motions the respondent desires to make. Only those issues raised by motion or brought into controversy by the responsive pleading supported by affidavit(s) will be considered at the return of this Order and any uncontested allegations in the petition will be considered as admitted.
 
 
 28
 The record on appeal does not show whether a copy of this order to Troupis was served on Stamberger. However, on June 9, 1980, attorneys (not Troupis) for Stamberger filed in district court a motion for an order granting Stamberger leave to intervene in the enforcement proceeding, as permitted by § 7609(b) (1). That motion included an allegation in rather general terms that Stamberger enjoyed a privilege with respect to some or all of the documents which Troupis had been summoned by IRS to produce. There is nothing to show that the motion for leave to intervene was ever acted upon. However, on July 8, 1980, Stamberger's attorneys filed an answer to the IRS petition for enforcement, raising as defenses, in rather general terms, an attorney-client privilege and a "personal papers" privilege. Thereafter, Stamberger was treated by the district court as a party who had been granted leave to intervene.
 
 
 29
 Meantime, service of the petition and order to show cause had not been effected as to Troupis. A new order to Troupis was entered on July 13, 1980, requiring him to appear on July 28, 1980 to show cause why he should not be compelled to obey the IRS summons. It contained the language quoted above to the effect that Troupis had five days after service within which to serve and file a written response to the petition, supported by affidavits. Apparently, service on Troupis was accomplished and the matter proceeded through several delays and postponements, attributable principally to disputes over the extent of discovery to which Stamberger was entitled.
 
 
 30
 When the evidentiary hearing before the magistrate occurred on October 21, 1980, and Stamberger's attorney adverted to possible privilege, government counsel objected on the ground that Stamberger had not supported by affidavit the privilege defense, as required by the June 3 order to Troupis to show cause, but also on the ground that the enforcement hearing was too early a point at which to raise the claim of privilege. The magistrate agreed that it was premature to raise the claim in the hearing in the course of the enforcement proceeding. The magistrate then recommended entry of an order compelling Troupis to respond to the IRS summons. Stamberger filed objection to the magistrate's report and recommendation on the ground, among others, that the magistrate had improperly refused to entertain the claim of privilege. The government's response to this objection was that the June 3, 1980 order to show cause, "which was binding upon the taxpayer by virtue of his intervention in the suit," required Stamberger's response to be accompanied by affidavits, and also that the enforcement hearing was too early a time to raise the claim. The district court agreed that the attempt to raise the claim had been premature and ordered Troupis to comply with the IRS summons.
 
 
 31
 I appreciate that we might well surmise that Troupis, Stamberger, and Stamberger's then counsel were in close touch with one another throughout the sequence. We might well surmise that the June 3, 1980 order to Troupis to show cause was served at that time on Stamberger. When we are engaged in the task of adjudication, I think we should not indulge in such surmise. But even if we were to do so, today's majority opinion also requires us to conclude that Stamberger was fairly warned by the June 3, 1980 order to Troupis that Stamberger was also bound to respond with affidavits within five days of service. More particularly, today's majority opinion requires us to conclude that Stamberger was fairly warned that within five days of service upon him of the June 3, 1980 order directed expressly only to Troupis, Stamberger was required to gather, serve, and file whatever affidavits were appropriate to show, by the recital of specific facts, that the claim of privilege was valid as to this document and that document, although perhaps not as to some other document.
 
 
 32
 Service upon Stamberger of a copy of the June 3, 1980 order to Troupis, if such service did occur, was the first occasion on which Stamberger could have been formally notified that IRS had commenced a proceeding in district court. Once that proceeding had been commenced, but only when it had been commenced, under § 7609(b)(1) he enjoyed "the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604." It remained his option for some interval thereafter (an interval not specified in the statute) to move for leave to intervene or not so to move. Once he had chosen to move for leave to intervene, intervention was not automatic. Although the step seems to have been omitted somehow in this case, it is necessary for the district court to decide whether a particular person who seeks leave to intervene as of right is indeed entitled to do so. Rule 24(a) and (c), Fed.R.Civ.P. Form 23 of the Appendix of Forms is a model motion to intervene, embodying the suggestion that the motion be accompanied by a proposed answer to the complaint. A form of a proposed answer is also provided in the Appendix and, of course, it does not include an assortment of specific facts and it is not accompanied by affidavits. In this perspective, I cannot join the majority in its apparent acceptance of the government's argument in the district court that the June 3, 1980 order to Troupis-with its five-day requirement and its requirement of affidavits to accompany the response-"was binding upon the taxpayer by virtue of his intervention in the suit."
 
 
 33
 About 14 months after Stamberger's answer to the IRS petition was prepared, this court enunciated a set of procedural rules for IRS enforcement proceedings. United States v. Kis, 658 F.2d 526 (7th Cir. 1981). Even then, the procedural scheme was not fine-tuned to third-party record keeper proceedings in which taxpayers seek and are granted leave to intervene. Today's decision is the occasion for such fine-tuning. In my view, it is far too strained and severe to attempt to apply to the summer of 1980 these subsequently shaped requirements. I would reverse the order of the district court and remand for further proceedings in which the claim of privilege is entertained.
 
 
 34
 As for the procedure to be required in the future, I suggest that a time be set, following notice to the taxpayer that the enforcement proceeding has been commenced, within which the taxpayer must move for intervention, and that the order granting intervention include the explicit requirement that the answer to the enforcement petition allege specific facts and be accompanied by appropriate affidavits.
 
 
 
 *
 The Honorable James E. Doyle, United States Senior District Judge for the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 Stamberger was not entitled to an enforcement hearing based on his claim of privilege. Simply because he was entitled to a hearing on other grounds does not entitle him to introduce evidence on issues not properly before the trier of fact
 
 
 [2]
 The fact that the magistrate gave a wrong reason (subsequently adopted by the trial judge) for denial of the privilege defense does not preclude us from approving the ruling based on a different reason that we believe to be the correct one
 
 
 [3]
 Stamberger also failed to support his answer by affidavit until after the hearing before the magistrate
 
 
 [4]
 This opinion was circulated to all active members of this court under Circuit Rule 16(e) to determine whether they wished to rehear the matter en banc with respect solely on the point delineated in this penultimate paragraph and which does not purport to consider all aspects of this appeal