UNITED STATES of America; **Bradley P. Whites, Special Agent, Internal Revenue Service, Petitioners–Appellants,**

v.

**Joseph P. BORNSTEIN, Respondent–Appellee.**

**No. 92–1170.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1992.

Decided Sept. 28, 1992.

As Amended Nov. 2, 1992.

---

Charles Edward Brookhart, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Brien C. Griffin, Acting Asst. Atty. Gen., Gary R. Allen, Regina S. Moriarty, Richard D. Bennett, U.S. Atty., Baltimore, Md., on the brief), for petitioners-appellants.

Richard E. Timbie, Caplin & Drysdale, Chartered, Washington, D.C., argued (Cono R. Namorato, James Sottile, IV, on the brief), for respondent-appellee.

Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

After the Internal Revenue Service ("IRS") issued a subpoena relating to a tax return prepared by Joseph Bornstein, Bornstein refused to turn over certain documents, claiming that the attorney-client privilege and the work product doctrine protected them. The withheld documents included documents Bornstein's clients gave to him and workpapers an accountant prepared for him. Without reviewing the documents *in camera*, the district court ruled that the attorney-client privilege applied and denied enforcement of the summons. On appeal, the IRS argues that the district court erred in not making a document-by-document, *in camera* determination of the privilege's applicability. We hold that the IRS waived this argument below with regard to the documents Bornstein's clients gave to him, but we remand for the district court to address whether either the attorney-client privilege or the work product doctrine applies to the accountant's workpapers.

### I

Bornstein is both an accountant and a lawyer. Bornstein signed Guillermo and Lillian Sevilla–Sacasas' 1986 federal income tax return as the paid preparer on behalf of the accounting firm Bornstein, Redler & Lipton, P.A. Martin Redler signed the Sevilla–Sacasas' 1987 return as the paid preparer, also on behalf of the accounting firm Bornstein, Redler & Lipton.

After examining Guillermo and Lillian Sevilla–Sacasas' 1987 tax return, the IRS requested documents related to that return. Bornstein and Eduardo Sevilla, the Sevilla–Sacasas' son, alleged in two affida-

vits that the following then occurred: Sevilla came to Bornstein for legal advice concerning the IRS examination and document request. All the work that Bornstein thereafter performed for the Sevilla–Sacasas and Sevilla was legal in nature. From what Sevilla disclosed, Bornstein believed that the government might bring civil or criminal actions against the Sevilla–Sacasas and Sevilla. Bornstein's clients gave Bornstein documents relevant to their 1988 return (the "preexisting documents"). Bornstein had Eric Fig, a certified public accountant employed by Bornstein's firm, provide the accounting assistance that Bornstein required in order to give legal advice to the Sevilla–Sacasas. To help Bornstein give legal advice and in anticipation of civil and possibly criminal litigation, Bornstein directed Fig to prepare worksheets summarizing relevant information from the preexisting documents. Bornstein then prepared the Sevilla–Sacasas' 1988 tax return, listing the return as having been prepared by himself as an attorney with Joseph P. Bornstein, Ltd. At Bornstein's advice, the Sevilla–Sacasas listed $613,769 in interest income without disclosing the source of the income, claiming that the Fifth Amendment privilege against self-incrimination protected them from disclosing the source.

The IRS then issued a summons to Bornstein seeking:

> Any and all original records relating to or connected in any way with the preparation of income tax returns (Form 1040), in your actual or constructive possession in the name of Guillermo and/or Lillian Sevilla–Sacasa ... for the calendar years 1986, 1987 and 1988. Such records should include but not be limited to the following:
>
> 1. All accounting workpapers, financial statements, computer printouts, schedules, retained copies of Form 1099, correspondence, rough notes and memorandums;
> 2. Retained copies of tax returns in your possession; and
> 3. Any corroborating documents covering items reflected on the tax returns.

J.A. at 14. Responding to the summons, Bornstein appeared before the IRS and produced some of the summoned documents. Bornstein refused to produce any documents relating to the source of the $613,769 interest income the Sevilla–Sacasas had reported on their 1988 return, including the preexisting documents and the accountant's workpapers, on the ground that the attorney-client privilege protected the documents from disclosure. Bornstein also refused to answer any questions relating to the source of that interest income.

The IRS then petitioned the district court to enforce the summons, and each party filed a memorandum with the court. In his memorandum, Bornstein suggested several times that the district court view the documents *in camera* in order to determine whether the attorney-client privilege or work product doctrine applied. The IRS memorandum did not address *in camera* review or the preexisting documents, arguing instead that the Sevilla–Sacasas had waived any privilege and that the accountant's workpapers could not be privileged. At the enforcement hearing before the district court, the parties only addressed whether the Sevilla–Sacasas had waived their Fifth Amendment privilege either by reporting the amount of their interest income or by communicating information to their son. Several times during the hearing, Bornstein's attorney suggested an *in camera* proceeding to help the district court decide whether the Sevilla–Sacasas' son had served as his parents' "confidential intermediary" when he met with Bornstein. At one point, the district court asked the IRS attorney, "[W]hat objection, if any, do you have to an *in camera* proceeding ...?" J.A. at 58. The IRS attorney objected that an *in camera* proceeding would limit the IRS' opportunity for cross-examination, and argued that the court need not reach the "confidential intermediary" question, and the district court decided not to hold an *in camera* proceeding.

Before and after issuing its oral decision, the district court asked the parties if there were any other issues they wanted to address; neither added to the waiver issues

the IRS had addressed. J.A. at 69, 80. In its decision, the district court denied enforcement of the summons. The court held that communications between Eduardo Sevilla and Bornstein were privileged, and that the Sevilla–Sacasas had not waived their Fifth Amendment privilege as to the source of their interest income by transmitting information to their son or by reporting the amount of that income on their tax return.

The IRS appeals and now argues that the case should be remanded for the district court to make a document-by-document determination, *in camera* if necessary, of whether the attorney-client privilege protected the preexisting documents from disclosure. The IRS also points out that the district court did not address the accountant's workpapers, arguing that the district court erred in refusing to enforce the summons as to them.

## II

Bornstein contends that the IRS waived the document-by-document, *in camera* review issue by not raising it below. At oral argument to this court, the IRS conceded that it never requested the district court to make such a review. Instead, the IRS only cited cases in its memorandum to the district court that, upon examination, supported the IRS' position on appeal. *See* IRS Reply Mem. at 6–7. The IRS cited those cases to support its argument that the accountant's workpapers were not privileged, not in support of document-by-document review of the preexisting documents. *Id.* Thus, the IRS urges document-by-document review for the first time on appeal, and ordinarily a party waives an issue unless it raises that issue below. However, this court recognizes a narrow exception to the usual waiver rule:

> While it is true that we ordinarily will not consider issues raised for the first time on appeal, we have recognized that in very limited circumstances we may consider such an issue if the error is "plain" and our refusal to consider it would result in a miscarriage of justice.

*National Wildlife Fed'n v. Hanson,* 859 F.2d 313, 318 (4th Cir.1988). Therefore, we must determine whether there has been plain error below and whether recognizing a waiver would result in an injustice.

The IRS argues that the district court's failure to make a document-by-document finding as to the preexisting documents amounts to plain error. The most thorough analysis of the rule the IRS urges on this court is contained in *United States v. First State Bank,* 691 F.2d 332 (7th Cir. 1982). In *First State Bank,* the court stated:

> We held in *United States v. Kis,* 658 F.2d 526, 539 (7th Cir.1981), that once the IRS establishes a prima facie case in favor of enforcing a summons, a taxpayer must "... answer the Government's case through responsive pleadings, supported by affidavits, that allege *specific facts* in rebuttal." Legal conclusions or memoranda of law will not suffice.
>
> . . . .
>
> [Here, the taxpayer] did not allege specific facts in his answer which would establish the existence of a privilege. [The taxpayer] simply stated that the documents sought were protected by privilege. A blanket privilege claim of this type is not allowed by *Kis. See also United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir.1981). The "specific facts" requirement of *Kis* mandates that the privilege must be asserted on a document-by-document basis. A taxpayer need not reveal so many facts that the privilege becomes worthless but he must at least identify the general nature of that document, the specific privilege he is claiming for that document, and facts which establish all the elements of the privilege he is claiming. These allegations must be supported by affidavits.

*Id.* at 335 (footnotes omitted). The principal evil that the document-by-document rule seeks to curtail is the "blanket" privilege claim, that is, a broad, undifferentiated claim that all summoned documents are protected from disclosure. *See, e.g., id.; United States v. El Paso Co.,* 682 F.2d 530, 541 (5th Cir.1982); *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir.), *cert.*

*denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

■ This court has not had the occasion to consider the document-by-document rule. While we agree with the rule as described in *First State Bank,* the situation in this case is quite different from that in *First State Bank* and the other cases the IRS cites. Two affidavits, Bornstein's and Sevilla's, support Bornstein's allegations. Bornstein's affidavit sets out very detailed facts that specified the privilege he claimed (attorney-client), established all the elements of that privilege, and identified the general nature of the withheld documents. *See* J.A. at 22–28. The only arguable deficiency in Bornstein's affidavit is that he did not reveal how many preexisting documents there were. *Id.* ¶¶ 12, 14. In that sense, Bornstein did not make the required "document-by-document" claim of privilege. However, Bornstein clearly identified the nature of the preexisting documents. He also produced all the other documents the IRS summons called for, (except for the accountant's workpapers), including documents related to the Sevilla–Sacasas' 1986 and 1987 tax returns, and documents related to the 1988 return for which he did not claim a privilege. Therefore, this case in no way involves the "blanket" assertion of privilege that courts uniformly disallow. We hold that when, as here, a party asserting the attorney-client privilege against a tax summons sets out specific facts establishing the elements of the privilege and detailing the general nature of the withheld documents, there is no plain error if the district court fails to make a *sua sponte,* document-by-document finding of the privilege's applicability.

■ We next consider whether there is a miscarriage of justice in finding that the IRS waived the document-by-document, *in camera* issue. Bornstein's memorandum suggested several times that the district court could view the documents *in camera,* but the IRS' memorandum never responded to that argument. When the district court considered holding an *in camera* proceeding during the enforcement hearing, the IRS attorney opposed it. While that opposition concerned the issue of whether Sevilla had acted as his parents' agent, earlier in the hearing Bornstein's attorney had suggested an *in camera* proceeding for other purposes. *See* J.A. 47–49, 55. The IRS attorney thus had the opportunity then, as well as later in the hearing, to request the district court to make a document-by-document, *in camera* examination, but did not do so. Under these circumstances, with the IRS attempting to change its position on appeal after having had ample opportunity to raise the document-by-document issue below, there is no miscarriage of justice in holding that the IRS waived this issue as to the preexisting documents, and we do so hold.

■ Next, we consider the accountant's workpapers. The IRS addressed the accountant's workpapers in its memorandum to the district court, and Bornstein does not argue that the IRS waived its arguments relating to them. Instead, Bornstein argues that either the attorney-client privilege or the work product doctrine protects disclosure of the accountant's workpapers. Unfortunately, the district court completely failed to address the accountant's workpapers in its ruling, and we therefore find it necessary to remand the case for the district court to determine at an evidentiary hearing whether either the attorney-client privilege or the work product doctrine protects the accountant's workpapers. Bornstein will bear the burden of proving that either applies. *See, e.g., United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

In deciding whether the attorney-client privilege applies, one determination the district court must make is whether Bornstein in fact had Fig prepare the accounting workpapers in order for Bornstein to give the Sevilla–Sacasas *legal* advice, rather than accounting advice. *See United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989); *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961). Preparation of tax returns is primarily an accounting service, not a legal one, and accounting services are ordinarily not privileged. *United States v. Davis,* 636 F.2d 1028, 1043 (5th Cir.), *cert.*

*denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). However, "[a]ccounting services performed ancillary to legal advice may be within the attorney-client privilege. Preparation of tax returns may in some circumstances come within this category...." *Id.* at 1043 n. 17. Ordinarily, though, the attorney-client privilege "does not attach to tax work prepared by accountants unless the accountant is translating complex tax terms into a form intelligible to a lawyer at the lawyer's behest." *United States v. El Paso Co.,* 682 F.2d 530, 541 (5th Cir.1982). Since Bornstein is himself an accountant, it is not immediately apparent how Fig's accounting services made "complex tax terms ... intelligible" to Bornstein or helped Bornstein give *legal* advice. On remand, the appropriate inquiry that we have culled from the caselaw is whether the accountant's workpapers were produced more for the benefit of Bornstein the lawyer or more for the benefit of Bornstein the accountant/tax preparer, that is, whether the accounting services were performed primarily to allow Bornstein to give legal advice. *See Davis,* 636 F.2d at 1043 n. 17. We realize that this is a difficult line to draw, especially in this case, and the existing record is inadequate for this court to make the determination.* The district court may need to view the workpapers *in camera* or take *in camera* proffers in order to decide the issue.

The determination of whether the work product doctrine applies to the accountant's workpapers is more easily defined. On remand, the district court must decide initially whether the accountant's workpapers were prepared in anticipation of litigation and not in the ordinary course of business, after considering whatever memoranda or evidence the court deems necessary. *See, e.g., National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980 (4th Cir.1992); *El Paso Co.,* 682 F.2d at 542. Again, the existing record is too sparse to allow this court to make the determination of whether the work-product doctrine applies.

Because we uphold the district court's denial of enforcement as to the preexisting documents and find it necessary to remand for the district court to address the issue of the accountant's workpapers, the judgment of the district court is hereby

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

\* On the one hand, Bornstein's affidavit states that he retained Fig to help him give his clients legal advice. The record also contains two bills for the work Fig performed, but the bills only specify that "professional services" were rendered. J.A. at 32–33. On the other hand, the IRS argues that Fig's workpapers by their very nature were only useful as accounting advice. The IRS stresses the fact that, after Fig produced his workpapers, Bornstein prepared the Sevilla–Sacasas' 1988 tax return. Of course, on that very return the Sevilla–Sacasas made the legal claim to a Fifth Amendment privilege.