61 F.3d 901
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael D'ORDINE, Defendant-Appellant.
 No. 94-5479.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 28, 1995.
Decided: July 12, 1995.
 
 George F. Fordham, Clarksburg, WV, for appellant. William D. Wilmoth, U.S. Atty., Sam G. Nazzaro, Asst. U.S. Atty., Wheeling, WV, for appellee.
 Before WILKINSON and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Michael D'Ordine entered a guilty plea to one count of using a communication facility (a telephone) in February 1993 to facilitate the distribution of marijuana, 21 U.S.C. Sec. 843(b) (1988). Although D'Ordine's plea agreement stipulated that his relevant conduct was the 80 pounds (36.2 kilograms) of marijuana he sold in February 1993, the district court determined that an additional 200 pounds (90.7 kilograms) which he negotiated to buy in August 1993 was also relevant conduct. United States Sentencing Commission, Guidelines Manual, Secs. 1B1.3, 2D1.1 (Nov.1993). D'Ordine received the maximum sentence of four years. He appeals, contending that the district court erred in finding that the 200-pound transaction was relevant conduct, and in finding that use of information concerning the 200-pound transaction was not precluded by guideline section 1B1.8. We affirm.
 
 
 2
 D'Ordine was arrested in August 1993 in California when he attempted to buy 200 pounds of marijuana from law enforcement authorities conducting a reverse sting operation. D'Ordine had $39,000 in cash for the purchase. The money belonged to Eric Walton, a West Virginia drug dealer to whom D'Ordine had supplied marijuana in the past. D'Ordine was debriefed by Detective David Saunders of the Santa Barbara County Sheriff's Office. He admitted his dealings with Walton in the hope that he could make a deal with the California authorities, and that his statements would not be used against him. However, no plea agreement was reached.[1]
 
 
 3
 Investigators in the Santa Barbara County Sheriff's Office passed their information about Walton and D'Ordine to the United States Attorney's Office in West Virginia. D'Ordine was debriefed by federal prosecutors in West Virginia and admitted to making additional deliveries of marijuana to Walton. D'Ordine eventually pled guilty to one count of using a telephone in February 1993 to facilitate the marijuana conspiracy and the distribution of marijuana. His plea agreement contained a non-binding stipulation that his relevant conduct would be 20-40 kilograms of marijuana.
 
 
 4
 Despite the stipulation, the probation officer recommended that both the 80 pounds delivered in February 1993 and the 200 pounds negotiated in August 1993 were relevant conduct because the government attorneys in West Virginia were aware of both transactions before D'Ordine was debriefed in West Virginia and agreed to cooperate with authorities there. Together, these two transactions totaled 127 kilograms of marijuana. The additional deliveries of marijuana which D'Ordine revealed during his cooperation were not included in the sentence calculation. Both D'Ordine and the government filed objections to the inclusion of the 200 pounds negotiated in August 1993.
 
 
 5
 At sentencing, the district court decided that the 200 pounds was relevant conduct. The court found that the 200 pounds should be part of the sentence calculation because the government did not learn of it from D'Ordine, but had "independent knowledge" of it. The court refused to accept the stipulation in the plea agreement, finding instead that the relevant conduct was 280 pounds (127 kilograms) of marijuana, as recommended in the presentence report.
 
 
 6
 Under guideline section 1B1.3(a)(1) and (a)(2), a defendant's relevant conduct in a drug offense includes all his acts during the offense of conviction and those which were part of the same course of conduct or common scheme or plan. Application note 12 to guideline section 2D1.1 provides that drug amounts negotiated by the defendant should be used to calculate his sentence unless the district court finds that he lacked both the intent and the ability to produce the amount negotiated.
 
 
 7
 D'Ordine did not contend in the district court that the 200 pounds should be excluded either because he did not intend to supply it or could not supply it to Walton. Therefore, the district court made no specific finding on D'Ordine's intent or ability, and this issue is reviewed for plain error. United States v. Bornstein, 977 F.2d 112, 115 (4th Cir.1992). Because D'Ordine was actively trying to buy 200 pounds of marijuana when he was arrested, he clearly had the necessary intent. Because he had by his own admission already supplied marijuana to Walton on more than one occasion, the district court had no reason to find that D'Ordine was incapable of doing so again. The court did not plainly err in failing to find that the 200 pounds should be excluded under application note 12.
 
 
 8
 Application note 9 to guideline section 1B1.3 defines the terms same course of conduct and common scheme or plan. Two or more offenses are part of a common scheme or plan if they involved common victims, accomplices, purpose, or similar modus operandi. Two or more offenses are part of the same course of conduct if they are part of a single episode, a spree, or an ongoing series of offenses. Factors to consider are the similarity of the offenses, the time interval between them and, possibly, the nature of the offenses. See also United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir.1992) (court should consider similarity, regularity, and temporal proximity of offenses). The district court's factual determination that separate offenses are part of the same course of conduct or a common scheme or plan is reviewed under the clearly erroneous standard. Id. at 1143.
 
 
 9
 Consideration of these factors supports the district court's finding that the 200-pound negotiation in August 1993 was relevant conduct. D'Ordine argues that the February 1993 and August 1993 transactions are too remote in time from each other to be part of a common scheme or plan or the same course of conduct. However, there were other transactions not described in the presentence report; these amounts were not used to determine the offense level, but their existence indicates the regularity of D'Ordine's dealings with Walton. The 6-month interval between February and August is thus not very significant, particularly in light of the strong similarity of the offenses. Therefore, the district court did not clearly err in finding that the 200 pounds was relevant conduct.
 
 
 10
 Guideline section 1B1.8 provides that information about the criminal activities of others which is furnished by the defendant under a cooperation agreement may not be used to determine his guideline range unless the information was already known to the government before it entered into the agreement. USSG Sec. 1B1.8(b)(1). Applica tion note 3 states that when a defendant gives such information during plea negotiations, but no cooperation agreement is reached, use of the information for sentencing purposes is restricted by Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410.[2]
 
 
 11
 D'Ordine argues on appeal that the crucial question is when the probation officer learned about the 200-pound transaction in California. He claims that the district court erred by not making a finding on this question. In fact, the issue is whether the government attorneys in West Virginia were aware of D'Ordine's attempt to buy 200 pounds of marijuana for Walton before they entered into an agreement with him. D'Ordine does not dispute that the prosecutors in West Virginia learned about the 200-pound transaction at the same time they learned of his existence. Therefore, guideline section 1B1.8 did not restrict use of the 200 pounds to calculate D'Ordine's guideline range.
 
 
 12
 Moreover, D'Ordine's statements to Santa Barbara County Detective Saunders, in which he revealed that Walton was to have received the 200 pounds of marijuana, were not protected under Fed.R.Crim.P. 11(e)(6) or Fed.R.Evid. 410 because they were not made to a prosecuting attorney or to a person acting with the authority of the prosecutor. See United States v. Perez-Franco, 873 F.2d 455, 460-61 (1st Cir.1989); United States v. Porter, 821 F.2d 968, 976-77 (4th Cir.1987), cert. denied, 485 U.S. 934 (1988). Therefore, the district court did not err in finding that the 200 pounds should be used to calculate D'Ordine's guideline range.
 
 
 13
 We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Paul Rossier was arrested in California with D'Ordine. He was to have delivered the 200 pounds of marijuana to Walton in West Virginia. Rossier admitted that in February 1993 he had delivered approximately 80 pounds (36.2 kilograms) of marijuana to Walton at D'Ordine's request
 
 
 [2]
 Fed.R.Crim.P. 11(e)(6) provides in pertinent part that "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty" are not admissible against the defendant in a civil or criminal proceeding. Fed.R.Evid. 410 contains the same prohibition