**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                         No. 95-5020

HELEN SNIPES BRUNER,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-94-93)

Submitted: February 7, 1996

Decided: February 29, 1996

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Dean R. Davis, Wilmington, North Carolina, for Appellant. Janice
McKenzie Cole, United States Attorney, Harold F. Askins, Special
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Helen Snipes Bruner was convicted by a jury of conspiring, while
being an unlawful user of controlled substances, to receive or possess
an explosive which had been shipped or transported in interstate com-
merce, 18 U.S.C. § 371 (West 1966 & Supp. 1995), 18 U.S.C.A.
§ 842(i) (West 1976 & Supp. 1995). She appeals her conviction on
the ground of insufficient evidence. She also appeals her 24-month
sentence, contending that the district court clearly erred in refusing
her a 4-level adjustment for having a minimal role in the offense.
United States Sentencing Commission, Guidelines Manual,
§ 3B1.2(a) (Nov. 1994). We affirm the conviction and the sentence.

At the time of the offense, Helen Bruner (Helen) was separated
from her husband, James Bruner (James), and lived with her parents
in Dudley, North Carolina. However, she saw her husband nearly
every day. James Bruner lived in his mother's mobile home in Golds-
boro, North Carolina. The evidence at trial established that in May
1994, James discovered that one of his neighbors in the trailer park
was an ammunition specialist in the Air Force. James asked the neigh-
bor, Rob Brown, to help him get some explosives or a pipe bomb.
Brown notified his superiors of James's request and an investigation
ensued which was conducted by the Air Force Office of Special
Investigations (OSI) in conjunction with the Bureau of Alcohol,
Tobacco, and Firearms (ATF).

On May 19, 1994, Brown and an OSI undercover officer posing as
an Air Force friend of Brown's went to James's trailer and, in a two-
hour recorded conversation, discussed selling James a pipe bomb.
James said he wanted a pipe bomb capable of blowing up a car or a
house. He planned either to sell the bomb or to use it himself to blow
up a crack dealer to whom he owed money. Helen was present for the
entire conversation, and took part in the discussion. She and James

2

also smoked crack during the meeting and offered crack to Brown and the undercover agent. A price was agreed upon, and a pipe bomb was subsequently put together by an ATF explosives expert and brought to Goldsboro from Atlanta, Georgia.

On May 23, 1994, Helen drove her husband to a parking lot where delivery of the pipe bomb was to take place under surveillance. Helen's son, Alvin Grant, parked nearby to act as a lookout. James did not have the purchase money with him. While he discussed with Brown and the undercover agent how he could show the bomb to his intended customer who had the money, Helen drove off to find Alvin. She returned several times to warn her husband that Alvin had seen surveillance officers in the area and that he was being set up. She and James were arrested shortly afterward.

James Bruner pled guilty to conspiracy and possession of an explosive and testified against his wife at her trial. Helen Bruner testified in her own defense that she had nothing to do with the purchase of the bomb. She said she tried to leave the trailer during the May 19 meeting with Rob Brown and the undercover officer, but that James had prevented her from leaving. She said her husband had testified falsely in an attempt to frame her because he hated her, and that she had feared he would blow up her parents' house with the bomb. She said she drove her husband to the Roses' parking lot on May 23 without knowing why he wanted to go there, and tried to get him to leave when she realized he was going to buy a bomb. She said her son Alvin was in the area because they intended to have dinner together. She denied smoking crack at the May 19 meeting.

A conviction must be affirmed if there is substantial evidence to support a finding of guilt. Glasser v. United States, 315 U.S. 60, 80 (1942). The issue is whether, taking the view most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to the facts sought to be established. Id. The jury's estimation of the credibility of witnesses is not reviewable on appeal. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

3

Helen Bruner first challenges her conviction by arguing that the government failed to prove that the pipe bomb was shipped or transported in interstate commerce. Although she moved for a judgment of acquittal on general grounds, Helen did not make this argument in the district court. Therefore, we will review it under a plain error standard. United States v. Olano, 61 U.S.L.W. 4421 (U.S. Apr. 26, 1993) (No. 91-1306); United States v. Bornstein, 977 F.2d 112, 115 (4th Cir. 1992). The definition of "explosive," as the term in used in 18 U.S.C.A. § 842(i), includes but is not limited to black powder, initiating explosives, detonators, safety fuses, detonating cord, igniter cord, and igniters. 18 U.S.C. § 841(d) (1988). The agent who constructed the pipe bomb testified that he used black powder and similar materials which were on hand in the Atlanta ATF office to construct the pipe bomb. To complete the bomb, he also used a second type of explosive reloading powder which he purchased in South Carolina on his way to Goldsboro. This evidence was sufficient to show that the bomb itself, and its components, had traveled in interstate commerce.

Next, Helen contends that the evidence did not show that she personally intended harm to any person or property. However, the testimony of the government's witnesses, if believed by the jury, established that Helen took part in James's negotiations to acquire the bomb with full awareness of his intention to use it to blow up a house, a car, or a person, or to sell it to someone else who would use it similarly. In any case, the government had only to prove that Helen and James were unlawful users of controlled substances and that Helen agreed with James to receive or possess an explosive. The evidence was sufficient to establish both elements.

Finally, the district court did not clearly err in determining that Helen was more than a minimal participant. A minimal participant is one who is among the least culpable in the conduct of a group; she lacks knowledge or understanding of the scope and structure of the enterprise in which she is involved and of the activities of the others involved. USSG § 3B1.2, comment. (n.1). The definition does not fit this defendant. Therefore, the district court's factual finding was not clearly erroneous.

The conviction and the sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are

4

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED