William J. GARBER et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 75–2175.

United States District Court,
District of Columbia.

Nov. 12, 1976.

Memorandum Opinion Feb. 2, 1977.

Albert J. Ahern, Jr., Bailey's Crossroads, Va., John F. Mahoney, Jr., Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Ignazio J. Ruvolo, Trial Atty., Dept. of Justice, Washington, D. C., for defendant.

## ON MOTION FOR PRODUCTION OF DOCUMENTS

CHARLES R. RICHEY, District Judge.

This case is once again before the Court on plaintiffs' motion to compel the production of certain documents from the defendant United States of America. The governmental defendant has asserted what it terms "an evidentiary privilege recognized for inter-governmental memoranda which comprise part of a process by which governmental decisions and policies are formulated." Defendant's Memorandum of September 16, 1976. On September 3, 1976, this Court issued an Order finding that the privilege, which the Court referred to as "executive privilege," had not been properly asserted because the head of the department which had control over the matters and documents involved, the Attorney General, was not the official who asserted the privilege. In the aforementioned memorandum of September 16, 1976, the defendant responded by claiming that, inasmuch as it was invoking the evidentiary privilege referred to above, and not an executive privilege, "no affidavit from the Attorney General has been submitted in support of the claim."

The Court concedes that the evidentiary privilege asserted by the government in this case, also known as the "official informa-

tion privilege," can be distinguished from the broader executive privilege. *See* Note, "Discovery of Government Documents and the Official Information Privilege," 76 Colum.L.Rev. 142, at 142 n.2 (1976). On the other hand, the Court notes that courts and commentators often use and deal with the terms interchangeably. *See Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd.*, 384 F.2d 979 (D.C. Cir.), *cert. denied*, 389 U.S. 952 (1967); 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2019, at 167–75. Nevertheless, there is absolutely no distinction, as far as this Court has been able to determine, between the manner in which the "pure" form of executive privilege and the "official information privilege" are required to be asserted.

Government counsel's attention is drawn to a recent and exhaustive treatment of the official information privilege. Note, 76 Colum.L.Rev., *supra.* In discussing the procedural requirements for asserting the privilege, the author notes:

> When the government seeks to resist disclosure of official information in discovery proceedings, the correct procedure is for it to lodge a formal claim of privilege. The claim should be made by the head of the department which has control over the matter, after the department head has personally considered the matter. The consideration must include an evaluation of the risks of disclosure.

*Id.* at 166 (footnotes omitted). Although the author questions, as a policy matter, whether the above procedure should be applicable in all cases, he leaves little doubt that the passage quoted above is an accurate statement of the law as it currently exists.

Certainly, the law in this district requires the head of the agency involved to formally

assert the privilege. *Carl Zeiss, supra,* dealt with the assertion of the official information privilege in a discovery context. As defendants point out, the district court concluded that it did not need to delve "into the constitutional dimensions of executive privilege." 40 F.R.D. at 323. Yet, in asserting the "evidentiary privilege," *id.* at 324, it was still necessary for the government to invoke the privilege properly:

> Such is the nature of the Government's claim of privilege, formally asserted in its behalf by the Attorney General, whose affidavit not only so defines the documents retained as to bring them well within the scope of the privilege, but also incorporates his assessment, upon personal consideration, of the consequences of their production. *With the privilege thus properly invoked,* and the generally meritorious character of the claim apparent from the affidavit, the question remaining is whether, in the circumstances of the case, it should now be honored.

*Id.* at 326–27 (emphasis added, footnote omitted). *See also Freeman v. Seligson*, 405 F.2d 1326, 1338–1340 & n.63 (D.C. Cir. 1968); *Center on Corporate Responsibility, Inc. v. Shultz,* 368 F.Supp. 863, 872 (D.D.C. 1973).[1]

In this Court's Order of September 3, 1976, defendants were given fifteen (15) days to re-assert the privilege in a proper manner. The Court indicated that if the privilege was not so re-asserted, it would be deemed waived. In light of the long delay in reaching a decision on this motion, the Court has considered deeming the privilege waived at this point. However, the Court notes that the question of disclosure of the documents in question is one affecting the public interest, and the Court is reluctant to penalize the public for the government's failure to follow the dictates of the Court's

---

1. In support of its contention that it need not have submitted a formal claim of executive privilege because it was asserting "an evidentiary privilege recognized for intergovernmental memoranda," defendant has cited two cases in its Memorandum of September 16, 1976. The first is *Carl Zeiss, supra* ; as indicated above, the Court concludes that *Carl Zeiss* sup-

ports the opposite conclusion. The other is *National Courier Assoc. v. Bd. of Governors, Federal Reserve System,* 516 F.2d 1229 (D.C. Cir. 1975). As best as this Court can ascertain, *National Courier* does not deal with the question of the proper assertion of the privilege involved.

Order of September 3, 1976. Moreover, the question addressed in the instant Order is one as to which reasonable minds might differ, at least from a policy standpoint. Note, 76 Colum.L.Rev., *supra*, at 166–67. Accordingly, the Court will give the governmental defendant another opportunity. If the claim is to be asserted, it must be done by the Attorney General of the United States, within fifteen (15) days of the date of this Order. Defendant's attention is drawn to the discussion of the adequacy of a formal assertion of the privilege, from the standpoint of specificity, in Note, 76 Colum. L.Rev., *supra*, at 168 & n.160, specifically its discussion of *Black v. Sheraton Corp.*, 371 F.Supp. 97 (D.D.C.1974).

In accordance with the foregoing, it is, by the Court, this 11th day of November, 1976,

ORDERED, that defendants' assertion of the official information privilege be, and the same hereby is, denied, without prejudice; and it is

FURTHER ORDERED, that if defendants desire to assert properly any such privilege with respect to the documents in question, they shall do so within fifteen (15) days of the date of this Order.

## MEMORANDUM OPINION

This case is before the Court on cross motions for summary judgment. For the reasons hereinafter stated, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied, upon the ground that plaintiff's complaint does not state a claim upon which relief can be granted.

This case arises out of the takeover of the cellblock of the United States District Court for the District of Columbia in July 1974 by certain inmates of that cellblock. Plaintiffs are two attorneys who were interviewing clients in the cellblock at the time of the takeover. As a result, they were held as hostages from July 11, 1974 until July 14, 1974, when the attorneys made their escape with the use of a smuggled key. The defendant is the United States of America, which is responsible, through its employees in the United States Marshal's Service, for the maintenance and security of the cellblock.

Jurisdiction in this case is provided by the Federal Tort Claims Act, specifically 28 U.S.C. § 1346.

The essence of plaintiffs' claim is:

that their abduction, confinement and deprivation of their liberty, their mental anguish, the threats that were made to them by the inmates and all of the emotional trauma which occurred during their confinement and after they were released by the inmates was directly and proximately caused by the negligence of the United States and its employees . . . [and] said negligence was the proximate cause of the Plaintiffs' injuries and damages.

Amended Complaint, ¶ 28 (April 30, 1976). Each plaintiff asks for $500,000 in compensatory damages against the defendant.

The essence of the defendant's position on motion for summary judgment is: (1) plaintiffs charge the government with negligence; (2) plaintiffs claim no damages resulting from physical injury, only damages resulting from mental distress and anguish; (3) the long-standing rule in the District of Columbia,[1] is that "there can be no recovery for negligently caused mental disturbance or emotional distress, or any consequence thereof, which is not traceable to a substantial physical injury;"[2] (4) therefore, in the absence of a claim that the negligently-caused mental distress is traceable to a similarly-caused physical injury, plaintiff's claim for relief is not cognizable.

The Court finds that there is no dispute as to the material facts, as set forth above and hereinafter discussed.

---

1. The parties agree, as they must, that the law of the District of Columbia is applicable in this case as "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). *See*

*Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

2. *Gilper v. Kiamesha Concord, Inc.*, 302 A.2d 740, 745 (D.C.Ct.App.1973).

*I. Plaintiffs Seek Damages For Defendant's Negligence Under The Tort Claims Act, Without Any Allegation Or Claim Of Physical Injury; Accordingly, Their Claim Is Not Cognizable Under Settled Law Of The District Of Columbia.*

▌ As to the first element of defendant's position, a careful reading of both the original and amended complaints shows that plaintiffs' claims sound entirely in negligence, as distinguished from intentional tort such as false imprisonment. While there are repeated allegations of negligence in the complaints, no other type of tortious activity is alleged. Thus, it is clear from the complaints that while plaintiffs seek to hold the government responsible, because of its alleged negligence, for plaintiffs' "imprisonment" at the hands of the inmates, plaintiffs in no way charge the government with the elements of the tort of false imprisonment.[3] This reading of the complaints was confirmed by the following exchange at oral argument between the Court and counsel for the plaintiffs:

> The Court: You do not charge the government with having committed any intentional tort?
>
> Mr. Ahern: No. No.
>
> The Court: That is not an issue?
>
> Mr. Ahern: No.

The second element of the defendant's position, that plaintiffs claim no damages resulting from negligently-caused physical injuries, seemed at first to be more problematic. Plaintiffs referred to negligently-caused "physical stress" in their amended complaint, *see* ¶ 29, and it was not clear to the Court whether this constituted an allegation of physical injury. In its papers in support of its motion for summary judgment, the government put forward a convincing argument that discovery in this case has established that plaintiffs have made no claims for physical injury, or at best that any alleged physical injuries upon which they rely were insubstantial and did not lead to the mental distress plaintiffs allegedly suffered. It became unnecessary, however, for the Court to rule upon defendant's contention, as counsel for the plaintiffs candidly admitted at oral argument that his clients were not seeking damages for any physical injuries allegedly caused by defendant's negligence:

> The Court: There is no physical injury claimed? What you are asking for, as a result of the claimed negligence, if the Court finds negligence, is damages for mental distress?
>
> Mr. Ahern: And false imprisonment.[4]
>
> The Court: Right. But there are no physical injuries?
>
> Mr. Ahern: No impact.

> · · · · ·

> The Court: No physical injuries?
>
> Mr. Ahern: Yes, right.

---

**3.** Moreover, upon consideration of the nature of plaintiffs' allegations, it becomes clear that plaintiffs *could not* have made out a case for false imprisonment, even if that had been their intention. In the recent case of *Johnson v. United States*, 547 F.2d 688 (D.C.Cir. 1976), the court of appeals for this circuit reiterated the principle that "only an act intended to impose confinement or known by the actor to be *substantially certain* of doing so generates the common law tort of false imprisonment." At 692 (emphasis added). Quoting from the *Restatement of Torts*, the court noted that " '[i]t is not enough that the actor realizes or should realize that his actions involve a risk of causing a confinement, so long as the likelihood that it will *do so* falls short of a substantial certainty.' Restatement (Second) of Torts § 35, comment *h* (1965)." *Id.*, at 692 n.24. In the instant case, there is no allegation that employees of the United States knew that their actions were *substantially certain* to cause plaintiffs' confinement.

**4.** Counsel's reply that his clients sought damages for "false imprisonment" should not be taken as an indication that plaintiffs charge the government with the intentional tort of false imprisonment. As demonstrated at 366–367, n.3, *supra*, and accompanying text, false imprisonment is not, and indeed could not be, an element of plaintiff's claim against the defendant. Instead, as Mr. Ahern's co-counsel, Mr. Mahoney, explained at the close of oral argument: "the [government's] *negligence* caused the false imprisonment [by the inmates], which in turn, caused the damages. . . ." (emphasis added).

The third element of defendant's position is well-established. The landmark case establishing the rule for the District of Columbia was *Perry v. Capital Traction Co.*, 59 App.D.C. 42, 32 F.2d 938, *cert. denied*, 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929). The *Perry* court approved the trial judge's instructions permitting the jury "to award damages to the plaintiffs for the physical injuries caused by [the negligent act] and for 'mental pain and suffering *incident to* such physical injuries.'" *Id.* at 939 (emphasis added). The Court reasoned:

> Where there has been a substantial physical injury, medical testimony and common knowledge may furnish a guide for measuring the pain and suffering incidental to the injury; but when, as here, there has been no substantial physical injury, a jury ought not to be permitted to indulge in conjecture and speculation as to the effects of alleged nervous shock or fright.

*Id.* at 940. The policy rationale behind this long-standing rule was further elucidated by then-District Judge Spottswood W. Robinson III in *Brown v. Potomac Electric Power Co.*, 236 F.Supp. 815 (D.D.C.1964):

> It has long been the rule in the District of Columbia that there can be no recovery for negligently caused mental disturbance or emotional distress, or any consequence thereof, which is not traceable to a substantial physical injury. "The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. For the sake of reasonable freedom of action, in our own interests and that of society, we need the privilege of being careless whether we inflict mental distress on our neighbors."

*Id.* at 820, *quoting Clark v. Associated Retail Men*, 70 App.D.C. 183, 105 F.2d 62, 64 (1939) (footnotes omitted).

The *Perry* rule has survived, largely intact, to the present day. It is true that, in 1966, the United States Court of Appeals for this circuit called into question the distinction made in *Perry* between *substantial* and *insubstantial* physical injury. *Parrish*

*v. United States*, 123 U.S.App.D.C. 149, 357 F.2d 828. The *Parrish* court preferred to rely, instead, on a determination of whether plaintiff's alleged mental distress was attributable to the physical injuries sustained, regardless of whether those injuries were "substantial." On the other hand, the courts of the District of Columbia continue to hold that *substantial* physical injuries are required before damages may be claimed for mental distress. *See Gilper v. Kiamesha Concord, Inc.*, 302 A.2d 740, 745 (D.C.Ct. App.1973); *Randolph v. Bussey*, 104 Daily Wash.L.Rep., Dec. 29, 1976, at 2257, 2260 (D.C.Super.Ct. Dec. 2, 1976). Here, it is admitted that *no* physical injuries were sustained. Thus, it matters not whether *Parrish* or the more traditional *Perry* rule is applied, for either would bar plaintiff's claims.

II. *The "False Imprisonment" Authorities Cited By Plaintiffs Are Inappropriate And Distinguishable Because, As Demonstrated Above, There Is No Element Of False Imprisonment In Plaintiffs' Claim Herein.*

Plaintiffs have cited a variety of authorities for the proposition that, in a case charging defendant with an intentional tort such as false imprisonment, damages for mental distress may be recovered regardless of the presence or absence of a physical injury to which the mental distress can be traced. *E. g.*, 32 Am.Jur.2d *False Imprisonment* § 114 (1967). Thus, for example, plaintiff points to the case of *Chesapeake & Potomac Telephone Co. v. Clay*, 90 U.S.App. D.C. 206, 194 F.2d 888 (1952), in which the Court noted that, "for an infliction of mere mental suffering by an assault or an act of false imprisonment an action may be sustained, although the damage is purely mental." *Id.* at 891, *quoting* 1 *Sedgwick on Damages* § 43f, at 57 (9th ed). But plaintiffs neglect to emphasize the language which the court added immediately thereafter:

> But for wrongs, which do not fall within the class of wilful trespasses a different

rule prevails. Such wrongs are not usually actionable unless they result in some tangible physical or pecuniary damage; not for instance where they result in mere mental suffering unaccompanied by physical effect.

The instant action, of course, is *not* one charging defendant with a "wilful trespass" or any other type of intentional tort. The defendant herein is the United States, not the inmates who took over the cellblock, and the tort alleged is negligence, not false imprisonment or any other intentional tort. *See* pp. 366–367 n.3, *supra.,* and accompanying text. Plaintiffs' "intentional tort" authorities are therefore inappropriate to the circumstances of the instant case. In order for plaintiffs in *this* case to recover damages for mental distress, they must allege that a negligently-caused physical injury caused the mental distress; however, as demonstrated above, there *is no such* allegation of physical injury in this case.

Plaintiffs also point out that a recent amendment to the Federal Tort Claims Act exposes the government to liability for intentional torts, including false imprisonment, committed by its law enforcement officers. *See* 26 U.S.C. § 2680(h) (Supp. V 1975). To respond to this point, it is necessary to repeat the critical factor in this case: this is *not* a case charging false imprisonment or any other type of intentional tort. Thus, the amendment to the Tort Claims Act, dealing with intentional torts, has no effect whatsoever on the government's liability in this *negligence* case.

**III.** *The Negligence Cases Cited By Plaintiffs Are Inappropriate and Distinguishable Because They Are Based On A Factual Predicate—Physical Injury —Which, As Demonstrated Above, Is Not Present In The Instant Case.*

Plaintiffs have cited a variety of authorities to the effect that a jailer can be held liable for intentional torts committed by prisoners who escape as a result of the jailer's negligence. *E. g.,* Annot., 44 A.L. R.3d 899 (1972). Thus, in *Webb v. State,* 91 So.2d 156 (La.App.1956), the state was held liable in negligence for the damages caused by a prisoner who escaped from a state prison. But, for purposes of the instant case, the critical factor in *Webb* was that the plaintiff suffered physical injury: the prisoner shot the plaintiff with a gun he had stolen from the prison. The case therefore did not involve the question of the availability of damages for mental distress without the presence of physical injury. That question, of course, is precisely the issue upon which this case turns, for, as demonstrated above there is no claim for physical injuries in this case. What plaintiffs herein must show is that when a person is the victim of an intentional tort committed by a *third party* but also caused by a defendant's negligence, that plaintiff need not establish the presence of physical injury in order to recover damages from the negligent defendant for mental distress flowing from the third party's intentional tort. Plaintiff has offered *no* authorities in any jurisdiction, much less the District of Columbia, which stand for that proposition.[5]

5. Both plaintiffs and defendant have directed the Court's attention to the recent case of *Johnson v. United States,* 547 F.2d 688 (D.C.Cir. 1976), discussed in a slightly different context in note 3, *supra.* As this Court has done in the instant case, the *Johnson* court distinguished liability for the intentional tort of false imprisonment from "liability for negligence causing a confinement when actual damage ensues." *Id.,* at 692. As examples of the latter type of negligence, the court cited several state court cases exploring, *inter alia,* the extent to which a bank may be held liable when it negligently dishonors a drawer's check and, as a result, the drawer is wrongfully confined by a third party. *Id.,* n.23. The cited cases touch briefly upon the availability of damages for mental distress in such situations. While results vary, depending upon whether recovery is based upon statute or common law, the general governing principle, as stated in a treatise cited in one of the aforementioned cases, is that "[d]amages for mental anguish or emotional disturbance suffered by a depositor as the result of the bank's dishonoring checks drawn by him cannot be recovered as actual damages." 5A *Michie on Banks and Banking,* ch. 9, § 244, at 647 (Rev. ed. 1973). While the Court believes that the "bank dishonor" cases arise from factual settings which are only roughly analogous to the instant case, it is clear that the general rule supports the conclusion reached by the Court in this case.

### IV. *Conclusion*

For the foregoing reasons, the Court will grant defendant's motion for summary judgment and will deny the plaintiff's cross-motion for summary judgment.

In light of the Court's disposition of said motions, it will be unnecessary to consider further plaintiffs' pending discovery motion to compel the production of deleted portions of certain reports on courthouse security withheld by the government. Said documents shall be returned by the Clerk of this Court, under seal, to the attorney from the Department of Justice responsible for this case, who shall issue an authorized receipt therefor.