YANG You Yi, et al., Petitioners,

v.

Janet RENO, Attorney General of the
United States, et al., Respondents.

Civ. A. No. 1:CV–93–1702.

United States District Court,
M.D. Pennsylvania.

Oct. 17, 1994.

Lory D. Rosenberg, Washington, DC, for all petitioners.

Beverly J. Points, Patricia J. Butler, Barley, Snyder, Senft & Cohen, York, PA, for Yang You Yi.

Beverly J. Points, Barley, Snyder, Senft & Cohen, York, PA, for Bong Won Yee.

Christopher William Reichow, York, PA, for Guang Feng Li.

Thomas D. O'Shea, York, PA, for Chu–Su Chen.

Craig T. Trebilcock, Stock and Leader, York, PA, for Pin Lin.

David H. Weinstein, Kohn, Savett, Klein & Graf, Philadelphia, PA, Anthony B. Haller, Frances P. Rayer, Pepper, Hamilton &

Sheetz, Robert S. Kitchenoff, Philadelphia, PA, Seth Grossman, Kohn, Nast & Graf, P.C., Philadelphia, PA, Sharon J. Phillips, New York City, for Young Zhong Pan.

Paul Cokely, Jr., Lebanon, PA, for So Gee Dong.

Kevin M. Donovan, Morgan, Lewis & Bockius, Philadelphia, PA, for Chang Chun Lu.

John M. Ogden, York, PA, for Xin–Fei Zhang.

Stephen D. Converse, York, PA, for Dai Min Lu.

Anthony · J. Hom, Hwang and Nix, P.C., Philadelphia, PA, for Shi Chun Zheng.

Joshua D. Cohen, Hatrman, Underhill and Brubaker, Lancaster, PA, for Chun Hua Lin.

Lisa A. Baird, Hias and Counsel, Philadelphia, PA, for Xing Chen.

Thomas M. Place, The Dickinson School of Law, Carlisle, PA, for Shuidi Zheng.

Timothy J. Shultis, Crabbs & Frey, Hanover, PA, for Guo Zhen Xie.

N. Christopher Menges, Menges & Snyder, York, PA, for Li Yun–You.

Vivian B. Narehood, Gibbel, Kraybill & Hess, Lancaster, PA, for Ming Long Lin.

Ann Carr, Lancaster, PA, for Dek Fun Lin, Sing Chou Chung.

Marc G. Tarlow, Kain, Brown & Roberts, York, PA, for Zhong Chen.

Gavin Wayne Markey, York, PA, for Wang Chao Lin, Nan Ren Lin.

Tsiwen M. Law, Hwang & Nix, Philadelphia, PA, for Yeng Ming Lin.

Mary A. McDougall, Morgan, Lewis & Bockius, Philadelphia, PA, for Chan Bin Jong.

Michael Jay Krout, Morris & Vedder, York, PA, for Zeng Hua Zheng.

John R. Elliott, York, PA, for Yung Kwon Cheng.

Jessamyne M. Simon, Jill E. Garfinkle, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Rui Qui Huang.

Cindi L. Dresdner, New York City, for Shimu Chen, Fui Lin.

Kurt A. Blake, York, PA, for Gui Lin Cheng.

Jennifer H. Matson, York, PA, Craig Wilson, Wilson & Associates, P.C., New York City, for Ren Yan Yang.

David J. Maisch, Brogue, PA, for Yong Zheng.

Charles Andrew Rausch, York, PA, for Kwai Sung Cheng.

Daniel M. Pell, York, PA, for Xue Kian Chen.

Joseph McHale, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Yi Hong Lin.

Frank Countess, York, PA, for Gou Zhi Lee.

Emma L. Oh, Philadelphia, PA, for Jian Le Shi.

Melanie Albert Zampini, York, PA, for Wu Chao.

Gerald A. Lord, Law Offices of J. Christian Ness, York, PA, for Xing–Kwong Zheng.

Loura A. Selfe, Atlee & Hall, Lancaster, PA, for Xue Yao Lin.

Timothy J. Bergere, William F. Joseph, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Jian Bin Lin.

Terry Peyser Blynn, York, PA, for Wing Jong Jung.

Hanna A. Dunlap, Barley Snyder Senft & Cohen, Lancaster, PA, for Bin Hua Zheng.

Katherine Pandelidis Granbois, Harrisburg, PA, for Xiang Gui Cao.

Judith Musselman, Harrisburg, PA, for Zuoxun Lee.

Sarah M. Bricknell, Buchanon Ingersoll, P.C., Harrisburg, PA, for Chai Kan Cheng.

John B. Consevage, William D. Lenahan, Buchanan Ingersoll, Harrisburg, PA, for Ai Ming Wang.

William D. Lerahan, Buchanan Ingersoll, P.C., Harrisburg, PA, for Jar Jian Wang.

Eileen Shimizu, Philadelphia, PA, for He Ping Cao, Zeng–Ping Lui, Kou Zhang Cheng, Gong Shi, Cai Wan Chen.

William H. Poole, Jr., York, PA, for Yue Feng Lee.

Jared Ward Ingersoll, Hanover, PA, for Zhao Shan Zhao.

Enid H. Adler, North Wales, PA, for Fen–Hou Chen.

Craig Wilson, Wilson & Associates, P.C., New York City, for Chong Sheng Qu, Bao Qiao Zhang, Yong Ging Wu, Cian Gluan Yong, Cheng Ye Wu, Ming Guang Liu, Chun Lin Jin, Jan Yon Chung, Zhen Huan Weng, Kang Di Weng, Cheng Xiao Dai, Guo Ping Ye.

Mao–Jiang Lin, pro se.

Katherene Holtzinger Conner, York, PA, for Mao–Jiang Lin.

Wen–Hao Chen, pro se.

Jian Fu Chai, pro se.

De Hui Chen, pro se.

Ji Li Zheng, pro se.

Fu Sing Zheng, pro se.

Ye Zing Chai, pro se.

Robert E. Porges, New York City, for Ye Zing Chai, Shi J. Zheng, Lian Bing Zheng, Xue Can Zou, Xye Rong Zhan, Yue Feng Zhang, Hua Yi Zhon, You Shui Wang, Si Ou, Pan Shao Min, Duan Sheng Lin, Wor Oi Chin, Zhu F. Cheng, Guo Cheng Lin, Xin Sing Zhou, Guan Jun Wang.

Fa Yu Zhuang, pro se.

Shi J. Zheng, pro se.

Zhong Zhou, pro se.

Xiaomin Chen, Porges Law Offices, New York City, for Zhong Zhou.

Lian Bing Zheng, pro se.

Zhai Young Zhu, pro se.

Joel H. Cavadel, York, PA, for Zhai Young Zhu.

Xue Can Zou, pro se.

Xye Rong Zhan, pro se.

Au Zia Zhao, pro se.

Yue Feng Zhang, pro se.

Da He Zheng, pro se.

Shan Cien Zhang, pro se.

Nan Wei Zhang, pro se.

Hua Yi Zhon, pro se.

Ye Song, pro se.

Gin Guan Wu, pro se.

Ram M. Cheerath, York, PA, for Gin Guan Wu, Lu Tian Hao.

Yee Jan Wong, pro se.

Xin Chang Shang, pro se.

Zhong Wu Luo, pro se.

Huseh Ta Tang, pro se.

Wang Wu Dong, pro se.

You Shui Wang, pro se.

Zim Sheng Whang, pro se.

Si Ou, pro se.

Li Tun Cheng, pro se.

Pan Shao Min, pro se.

You Quan Lin, pro se.

Bi Sheng Liu, pro se.

Xu Yong Lu, pro se.

Lu Tian Hao, pro se.

Ghuan Li Liu, pro se.

Rui Kan Lin, pro se.

Xiang Keng Lin, pro se.

Kong Zhi Li, pro se.

Duan Sheng Lin, pro se.

Zhon Guan Li, pro se.

Jin Lim Fu, pro se.

Zhe Shung Jain, pro se.

Hyei Gwor, pro se.

Martina Bernstein, Morgan, Lewis & Brockius, Philadelphia, PA, for Hyei Gwor.

Wing–Hon Cheng, pro se.

Dai Zi He, pro se.

Paul S. Kline, Harrisburg, PA, for Dai Zi He.

Zhi Ping Gao, pro se.

Xiang Nmu Gao, pro se.

Yi Cheng Dong, pro se.

Ei Young Giang, pro se.

Son Shing Dong, pro se.

Jia Reng Dong, pro se.

Chi Chi Chung, pro se.

Wor Oi Chin, pro se.

Zhu F. Cheng, pro se.

Son Ching Cheng, pro se.

Gin Sen Cheng, pro se.

Tia Sian Chen, pro se.

Kan Guan Chen, pro se.

Kai Q Zeng, pro se.

Guo Cheng Lin, pro se.

Xiang Guan Cai, pro se.

Patricia R. Marcus, York, PA, for Xiang Guan Cai.

Xin Sing Zhou, pro se.

Yong Qui Chi, pro se.

Yong Ging Wu, pro se.

Cian Gluan Yong, pro se

Cheng Ye Wu, pro se.

Ming Guang Liu, pro se.

Chun Lin Jin, pro se.

Jan Yon Chung, pro se.

Edward L. Crow, York, PA, for Chang Qing Zhou.

Eileen C. Shimizu, Philadelphia, PA, for Mei Xi Chen.

Jian Biao Weng, pro se.

Daniel H. Shertzer, Jr., Lancaster, PA, for Dar Hua Wang.

Carl J. Anderson, Philadelphia, PA, for Zhe Shung Jan.

Melvin H. Hess, Gibbel, Kraybill & Hess, Lancaster, PA, Vivian B. Narehood, Gibbel, Kraybill & Hess, Lancaster, PA, for Zhong Ming Tian.

Jian Yun Wan, pro se.

Jia Wen Liu, pro se.

Bao Jin Lui, pro se.

Jeffrey A. Ernico, Buchanan Ingersoll Professional Corp., Harrisburg, PA, for Zhang Song Zhong.

Gloriana Noreika, York, PA, for Xin Bin Zheng.

Joseph J. Terz, Robert R. Long, Jr., U.S. Attys. Office, Harrisburg, PA, for all respondents.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Washington, DC, for George Maugans.

Robert R. Long, Jr., U.S. Attys. Office, Harrisburg, PA, Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Alexander H. Shapiro, Dept. of Justice, Civ. Div., Washington, DC, for David L. Milhollen.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Washington, DC, for Richard J. Sharkey, U.S. Immigration and Naturalization Service, Executive Office for Immigration Review, Janet Reno, Doris Meissner.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Alexander H. Shapiro, Dept. of Justice, Civ. Div., Washington, DC, for J. Scott Blackman.

Kathleen Blanchard, Morgan Lewis & Bockius, Philadelphia, PA.

Sharon J. Phillips, New York City.

Gordon Quan, Chair, Immigration Comm. Asian Pacific Amer. Bar Assn., Houston, TX, for National Asian Pacific American Bar Ass'n.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Respondents' motion for a protective order limiting the scope of discovery depositions. Briefs have been filed on relevant issues and the motion is ripe for disposition.

### Background [1]

The instant action arises out of the detention and attempted exclusion by the Immigration and Naturalization Service ("INS") of certain citizens of the People's Republic of China ("PRC"). The aliens at issue were among those arrested and detained after the

---

**1.** The background of this case is set forth in detail in this court's memoranda dated November 24, 1993, and December 7, 1993. Therefore, the background set forth here will be limited.

grounding of the *Golden Venture* in New York Harbor in June 1993.

When the *Golden Venture* ran aground, several hundred aliens being smuggled into the United States jumped overboard in an attempt to reach land. Several drowned and nearly three hundred were arrested and detained by the INS. Approximately 145 of those individuals subsequently were transferred to the York County Prison, a facility located in the Middle District of Pennsylvania. Many of the detainees, including the individual Petitioners in this action, filed claims for asylum. At the prison, exclusion proceedings under 8 U.S.C. § 1226(a) were instituted against the detainees. Ultimately, immigration judges heard and rejected the asylum claims of the instant Petitioners. Petitioners appealed to the Board of Immigration Appeals ("BIA") and, after the BIA dismissed their appeals, filed the present habeas actions.

On November 15, 1993, this court ordered the consolidation of the individual actions because the individual petitions appeared to present substantially similar claims. All related claims now are proceeding under the captioned case and later-filed petitions have been included in the interim relief provided by this court.

A discovery dispute developed when Petitioners submitted requests for discovery on counsel for the government. Petitioners' request for discovery was premised on their belief that the court must conduct a *de novo* review of Petitioner' asylum claims. The government opposed discovery, asserting that the court is limited to a review of the administrative record in Petitioners' cases.

On December 7, 1993, this court issued an order granting Petitioners leave to take limited discovery from the government regarding potential political interference and/or bias by the Clinton Administration in the asylum proceedings pertinent to this case. The three motions before the court arise from conflicts over what is required under that discovery order.

*Discussion*

## I. Respondents' Motion for a Protective Order Limiting the Scope of Discovery Depositions

Petitioners and the government agree that Petitioners shall be permitted to depose Mr. Eric Schwartz ("Schwartz") of the National Security Council ("NSC") staff and Mr. Grover Joseph Rees ("Rees"), former General Counsel of the Immigration and Naturalization Service ("INS"). Petitioners wish to question these prospective deponents about such matters as their knowledge of the following: (1) alleged *ex parte* contacts, and motive for such contacts, between the Clinton Administration and the Executive Office for Immigration Review ("EOIR"); (2) the function and content of meetings of the Boarder Security Working Group ("BSWG") as they pertain to the *Golden Venture* hearings; (3) changes in executive policy under the Clinton Administration toward Chinese aliens seeking asylum; (4) executive decisions to treat the *Golden Venture* cases differently from those of other asylum applicants; (5) White House involvement in attempting to deter Chinese alien smuggling by the manner in which the *Golden Venture* and other Chinese smuggled alien asylum hearings were handled; and (6) the inter-relationship of EOIR, INS and the Department of Justice ("DOJ") in connection with the Chinese asylum hearings.[2] The government does not object to Petitioners taking these two depositions, but argues that they should be restricted to inquiring

> as to whether the government adopted any policy or its officials issued any instructions or directions intended to limit the independence of immigration judges and members of the Board of Immigration Appeals in their disposition or adjudication of the administrative exclusion and asylum proceedings pertaining to the *Golden Venture* passengers detained in York County.

(Respondents' memorandum in support of motion for protective order limiting the scope

2. These areas of examination were identified in a May 25, 1994 letter from Craig T. Trebilcock, on behalf of Petitioners, to Philemina McNeill Jones of the Office of Immigration Litigation, giving notice of the areas upon which he intends to examine Mr. Rees. Respondents' discovery exhibit 13.

of discovery depositions, hereinafter "Respondent's motion to limit depositions", p. 3). The government offers two arguments in favor of this limitation. First, it contends that prior discovery shows that information which could be obtained through a broader scope of inquiry than it is calling for is irrelevant to the issues in this case. This argument is predicated on the claim that information disclosed in discovery thus far reflects no interference by the Clinton Administration with the adjudication of the *Golden Venture* proceedings and, on the contrary, refutes Petitioners' allegation of such interference. Petitioners reply that prior discovery has yielded support for their allegations of political interference, and has demonstrated that there remain relevant issues beyond the narrow scope of inquiry requested by the government.

The government's second argument is that the state secrets, deliberative process and attorney client privileges require that Petitioners' inquiry in the depositions be limited so as to prevent general questioning about the substance of discussions which Schwartz and/or Rees participated in or heard during the Boarder Security Working Group, any of its subcommittees or any other governmental meeting. In reply, Petitioners raise the doctrine that under certain circumstances the denial of access to evidence caused by the invocation of the state secrets privilege requires that persons held in confinement in connection with the case be released. Petitioners further respond that the deliberative process and attorney-client privileges are inapplicable to the present action.

## A. Relevance of Petitioner's Request

█ Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any matter "which is relevant to the subject matter involved in the pending action," if it would be admissible evidence or "appears reasonably calculated to lead to the discovery of admissible evidence." In its interpretation of this and other Federal Rules of Civil Procedure governing discovery, the Supreme Court has repeatedly held that such rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Her-*

*bert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979); *Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 241, 13 L.Ed.2d 152 (1964); *Hickman v. Taylor,* 329 U.S. 495, 501, 507, 67 S.Ct. 385, 388–89, 391–92, 91 L.Ed. 451 (1947). Further, the Supreme Court has specifically articulated the appropriate definition of relevance under Rule 26(b)(1):

> The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to *encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.*

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citing *Hickman,* 329 U.S. at 501, 67 S.Ct. at 388 (emphasis added)). This conception of discovery in general and relevance in particular requires that where relevance is in doubt, the court should be permissive in allowing discovery. *Heat and Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1024 (Fed.Cir.1986) (citing *Deitchman v. E.R. Squibb and Sons, Inc.,* 740 F.2d 556, 556 (7th Cir.1984)); *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves,* 144 F.R.D. 258, 265 (E.D.Pa.1992).

█ In the present case, this court has granted discovery to determine whether the Clinton Administration improperly exercised political influence and effectively dictated the outcomes of the administrative proceedings with respect to Petitioners' requests for asylum and withholding of deportation. In the midst of discovery pursuant to this court's order, the government presently contends that relevant inquiry in connection with Petitioners' claim of political bias is coextensive with inquiry "as to whether the government adopted any policy or its officials issued any instructions or directions intended to limit the independence of immigration judges and members of the Board of Immigration Appeals in their disposition ..." of the *Golden Venture* proceedings. (Respondents' motion to limit depositions, p. 3.) This contention misconstrues the Supreme Court's settled interpretation of the meaning of relevance un-

der Rule 26(b)(1) and of the Federal Rules governing discovery in general. The Court's interpretation of relevance in *Oppenheimer Fund, Inc.* counsels against limiting Petitioners' deposition inquiry to questions designed to elicit explicit conclusions about ultimate issues in the case, which is essentially what the government is presently requesting.[3]

Consequently, the government's motion for a protective order limiting the scope of discovery depositions is not supported by arguments based upon relevance limitations. Notwithstanding this holding, the court must now consider whether the government's claims of privilege are sufficient to justify precluding discovery of relevant material.

## B. Executive Privilege: State Secrets and Deliberative Process

The government argues that even if the court does not accept relevance as a ground for granting its motion to limit the scope of discovery, the motion should nevertheless be granted because the information Petitioners seek is protected by two forms of executive privilege. William H. Itoh, executive secretary of the National Security Counsel, apparently intending to invoke the privileges on behalf of the government, claims that some of the content of BSWG and related meetings is protected by the state secrets and deliberative process privileges.

In the leading case on the assertion of executive privilege, the Supreme Court set forth three threshold requirements for the invocation of the state secrets privilege:

There must be a (1) formal claim of privilege (2) lodged by the head of the department which has control over the matter, (3) after actual personal consideration by that officer. (number added; footnotes omitted)

*United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953); *Northrop Corp. v. McDonnell Douglas Corp.,* 751

F.2d 395, 405 (D.C.Cir.1984); *Ellsberg v. Mitchell,* 709 F.2d 51, 56–57 (D.C.Cir.1983); *Halkin v. Helms,* 690 F.2d 977, 991 (D.C.Cir. 1982); *National Lawyers Guild v. Attorney General,* 96 F.R.D. 390, 395 (S.D.N.Y.1982), *Kinoy v. Mitchell,* 67 F.R.D. 1, 9 (S.D.N.Y. 1975). The requirement that the privilege be asserted solely by the head of a department or agency, and even then only after personal review of the material in question, is not merely technical. Rather, it is intended to ensure that the privilege is invoked by an informed executive official of sufficient authority and responsibility to warrant the court relying on his or her judgment. *Kinoy,* 67 F.R.D. at 9; *National Lawyers Guild,* 96 F.R.D. at 396. As the *Reynolds* Court noted:

The *essential* matter is that the decision to object should be taken by the minister who is the *political head of the department,* and that he should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced.

345 U.S. at 8 n. 20, 73 S.Ct. at 532 n. 20 (citation omitted; emphasis added). In order to ensure that the executive official invoking the state secrets privilege has adequate knowledge of relevant facts, courts have held that to trigger review of such claims the person asserting the privilege must, at a minimum, make an explicit representation that he or she has personally seen and considered the material. *Northrop Corp.,* 751 F.2d at 405; *Kinoy,* 67 F.R.D. at 9; *National Lawyers Guild,* 96 F.R.D. at 396.

Further, the official who invokes the privilege "must set forth, with enough particularity for the court to make an informed decision, the nature of the material withheld and of the threat to the national security should it be revealed." *Kinoy,* 67 F.R.D. at 8; *Northrop Corp.,* 751 F.2d at 405; *accord,*

---

3. Much of the government's argument for limiting the scope of deposition questioning consists of claims that discovery thus far demonstrates that Petitioners' allegation of political bias is empty. Petitioners, on the contrary, insist that they have uncovered more than sufficient evidence in support of their political interference claim to justify further discovery. While the court, at this point, declines to evaluate what discovery has so far shown, it has determined that the government has failed to demonstrate that previous discovery requires limiting the relevant, legitimate scope of inquiry to which Petitioners are entitled.

*National Lawyers Guild,* 96 F.R.D. at 397; *see also, Ellsberg,* 709 F.2d at 56–57; *Salisbury v. United States,* 690 F.2d 966, 971–72 (D.C.Cir.1982).

Although *Reynolds* addressed only the state secrets privilege, its holding and direction have been uniformly applied to all forms of executive privilege, including deliberative process. For example, the court in *Northrop Corp.* stated:

Assertion of the deliberative process privilege, like the state secrets privilege, requires a formal claim of privilege by the head of the department with control over the information. That formal claim must include a description of the documents involved, a statement by the department head that she has reviewed the documents involved, and an assessment of the consequences of disclosure of the information.

*Northrop Corp.,* 751 F.2d at 405 n. 11; *accord, National Lawyers Guild,* 96 F.R.D. at 396, 403; *Garber v. United States,* 73 F.R.D. 364, 364–65 (D.D.C.1976), *affd. on other grounds,* 578 F.2d 414 (D.C.Cir.1978); *Kinoy,* 67 F.R.D. at 8; *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 327 (D.D.C.1966), *aff'd,* 384 F.2d 979 (D.C.Cir. 1967), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

■ In the present case, William H. Itoh, executive secretary of the NSC, apparently intends to invoke the state secrets and deliberative process privileges on behalf of the NSC, which, jointly with the Domestic Policy Council, established the BSWG. The statute which established the NSC provides the following:

**(a) Establishment; presiding officer; functions; composition....**

. . . .

The President of the United States shall preside over meetings of the Council: Provided, That in his absence he may designate a member of the Council to preside in his place....

. . . .

The Council shall be composed of—

(1) the President;

(2) the Vice President;

(3) the Secretary of State;

(4) the Secretary of Defense;

(5) the Director for Mutual Security;

(6) the Chairman of the National Security Resources Board; and

(7) The Secretaries and Under Secretaries of other executive departments and of the military departments, the Chairman of the Munitions Board, and the Chairman of the Research and Development Board, when appointed by the President and with the advice and consent of the Senate, to serve at his pleasure....

. . . .

**(c) Executive secretary; appointment; staff employees.** The Council shall have a staff to be headed by a civilian executive secretary who shall be appointed by the President. The executive secretary, subject to the direction of the Council, is hereby authorized, subject to the civil-service laws and the Classification Act of 1923, as amended, to appoint and fix the compensation of such personnel as may be necessary to perform such duties as may be prescribed by the Council in connection with the performance of its functions....

50 U.S.C. § 402. The executive secretary of the NSC is not a member of the Council. The only authority statutorily vested in the office is that its holder is authorized, "subject to the direction of the Council, . . . to appoint and fix the compensation of such personnel as may be necessary to . . ." satisfy NSC needs. The court does not believe that this amounts to the kind of political and policy making authority contemplated by the *Reynolds* Court. Consequently, the court finds that Itoh is not competent to invoke either the state secrets or deliberative process privileges.

■ The court acknowledges that since the NSC is not a "department" or "agency," applying the holding of *Reynolds* to it presents a special case. The Council is composed of department heads, and executive officials of comparable authority. Because Council membership constitutes substantial policy making responsibility, and because any member of the Council can be designated by the President to preside over its meetings, the

court believes that any member of the Council is qualified to invoke executive privilege in connection with NSC related material which falls within the province of their authority and expertise. This application of *Reynolds* to the NSC is consistent with *Reynolds* and its progeny with respect to the official status required to invoke executive privilege.[4]

■ Even if Mr. Itoh's official status were adequate to invoke the executive privileges claimed in the present instance, he has failed to satisfy a second *Reynolds* threshold requirement: that the official invoking the privilege must have personally considered the material for which the privilege is sought, and made an explicit representation to that effect. Itoh has done neither. At the outset of his declaration he states:

I am generally aware of the issues under litigation in *Yang v. Reno*. I have reviewed Judge Rambo's Memorandum and Order of July 15, 1994, and am familiar with the types of issues and information that could arise should petitioners be permitted to question NSC staff regarding deliberations and recommendations of the Border Security Working Group and related interagency working groups ... (Itoh Decl., Respondents' discovery exhibit 18, ¶ 2).

When addressing the deliberative process issue, Mr. Itoh explains:

I understand that on a number of separate occasions, members of the BSWG attended meetings with and briefed the President and Vice President to discuss and develop United States Government policy with regard to the smuggling of aliens into the United States and border security issues more generally. In consultation with the Office of White House Counsel and the NSC's Legal Advisor, it is my judgment that questions relating to what was said,

recommended, and decided within the context of these meetings, or in preparation for these meetings, is squarely within the President's executive privilege. *Id.*, ¶ 7.

With respect to the state secrets claim, Mr. Itoh continues:

... although it is not appropriate to cite specific examples, much of the information discussed at these meetings was classified in accordance with Executive Order 12356 and is subject to the State Secrets privilege. *Id.* ¶ 9.

Finally, Mr. Itoh concludes:

I am not in a position to categorically assert that all questions pertaining to the work and deliberations of the Boarder Security Working Group would require the disclosure of privileged information in response. *Id.* ¶ 10.

It is not enough to satisfy the requirement of personal consideration that the individual asserting the privilege in the present case is "familiar with the types of issues and information that could arise" in a deposition, or that he "understand[s] that on a number of occasions" BSWG members met with the President and Vice President to discuss policy issues regarding alien smuggling. Because Mr. Itoh does not appear to have reviewed the specific content of the material for which privilege is sought, he is not competent to assert the state secrets or deliberative process privileges.

■ A third independent ground for concluding that the government has failed to properly invoke the privileges presently at issue is the lack of particularity in the government's identification of the material withheld and the reason for withholding it. *See Kinoy, supra.* Both the state secrets and the deliberative process privileges require specific showings on the part of the govern-

---

4. *Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (invoked by Secretary of the Air Force); *Halkin v. Helms (Halkin I)*, 598 F.2d 1 (D.C.Cir. 1978) (invoked by Secretary of Defence), *Halkin (Halkin II)*, 690 F.2d 977 (invoked by Director of the Central Intelligence Agency); *Northrop Corp.*, 751 F.2d 395 (invoked by Secretary of Defence); *Ellsberg*, 709 F.2d 51 (invoked by Attorney General); *National Lawyers' Guild*, 96 F.R.D. 390 (invoked by Attorney General); *Kinoy*, 67 F.R.D. 1 (invoked by Attorney General); *Garber*, 73 F.R.D. 364 (invoked by Attorney General); *Karl Zeiss Stiftung*, 40 F.R.D. 318 (invoked by Attorney General). Though the statute establishing the NSC states that the President shall preside over its meetings, the court believes that it would be inappropriate to require that the President invoke the privilege and personally review the NSC materials for which privilege is sought. This is especially so because the status of other members of the NSC appears consistent with the meaning of *Reynolds*.

ment.[5] The totality of Mr. Itoh's remarks relevant to this issue are contained in the excerpts from his declaration set out above. The statement that the material in question in the present case involves discussions of "United States Government policy with regard to the smuggling of aliens into the United States and border security issues more generally" is insufficient to allow the court to make an informed judgment of the government's claim of deliberative process privilege. Similarly, the statement that "much of the information discussed at these meetings was classified in accordance with Executive Order 12356" is inadequate to allow the court to evaluate the merits of the government's claim of state secrets privilege.[6] Because the government has failed to provide adequate information to allow this court to make a legal determination as to either of the executive privileges at issue, the government cannot obtain a protective order based upon these privileges.

Respondents have failed to satisfy the well established threshold requirements necessary to invoke the state secrets and deliberative process privileges. Nevertheless, the government will be given the opportunity to re-assert the privileges in accordance with this memorandum.

### C. Attorney–Client Privilege

The government's final argument is that some of the material in question is protected from disclosure by the attorney-client privilege. It claims that "[t]o the extent that Justice Department attorneys attended NSC or Presidential meetings to provide legal advice respecting such matters as the development of policy options or concerns over possible litigation, the discussions would be absolutely protected by the attorney-client privilege." (Respondents' motion to limit discovery, pp. 12–13.) However, the government raises only a single instance of a DOJ attorney attending a meeting which falls within

one of Petitioners' desired areas of examination in the depositions in question. Specifically, DOJ attorney Phyllis Coven attended a meeting with the President which related to alien smuggling, and at which Mr. Schwartz was also present.

It is well established that because the attorney-client privilege obstructs the factfinder's search for the truth, it must be construed as narrowly as possible consistent with its underlying logic. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1423 (3rd Cir.1991); *In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3rd Cir.1979). Accordingly, the Third Circuit has adopted Wigmore's famous formulation of the privilege:

> (1) Where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his insistence permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection be waived.

*U.S. v. Rockwell Int'l,* 897 F.2d 1255, 1264 (3rd Cir.1990) (quoting John Henry Wigmore, 8 Wigmore on Evidence § 2292, at 554). In applying this definition of the attorney-client privilege, the court in *Rockwell Int'l* further stated that "... most vital to the privilege is that the communication be made (1) *in confidence* (2) for the purpose of obtaining *legal* advice *from the lawyer."* *Rockwell Int'l,* 897 F.2d at 1264 (numbers added; emphasis in original); *United States v. Schmidt,* 343 F.Supp. 444, 446 (M.D.Pa. 1972).

▮▮▮ The confidentiality requirement bars assertion of the attorney-client privilege where the communications in question were voluntarily disclosed to a third party by the

---

5. For the standards governing the deliberative process privilege, see *Nadler v. U.S. Department of Justice,* 955 F.2d 1479, 1490–91 (11th Cir. 1992). For the standards governing the state secrets privilege, see *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 546–47 (2d Cir. 1991).

6. Executive Order 12356 sets out a uniform system according to which national security information shall be classified, declassified and safeguarded.

client. *Westinghouse Elec. Corp.*, 951 F.2d at 1424; *Rockwell Int'l*, 897 F.2d at 1265; *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980). Such voluntary disclosure can occur when communications between attorney and client take place in the presence of a third party. *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11 (N.D.Ill.1972) (citing McCormick on Evidence § 91, at 188 (2d ed. 1972)). This is so even if the third party agrees to keep the communications confidential. *Westinghouse Elec. Corp.*, 951 F.2d at 1427; *See Rockwell Int'l*, 897 F.2d at 1265. It follows from this facet of the attorney-client privilege that an attorney-client relationship alone does not give rise to a presumption of confidentiality. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355–56 (4th Cir.1984); *United States v. Schmidt*, 360 F.Supp. 339, 346–47 (M.D.Pa. 1973). However, the privilege will not be waived if "the disclosure [in the presence of a third party] is necessary to further the goal of enabling the client to seek informed legal assistance." *Westinghouse Elec. Corp.*, 951 F.2d at 1424, 1428; *See Rockwell Int'l*, 897 F.2d at 1265.

■ The second indispensable requirement for any claim of attorney-client privilege, according to the *Rockwell Int'l* court, is that the information for which the privilege is sought must have been disclosed because it was necessary to obtain informed legal advice, and might not have been disclosed otherwise. 897 F.2d at 1264–65; *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577; *Westinghouse Elec. Corp.*, 951 F.2d at 1423–24. In light of this principle,

> . . . it is apparent that the mere attendance of an attorney at a meeting, even where the meeting is held at the attorney's insistence, does not render everything done or said at that meeting privileged. For communications at such a meeting to be privileged, they must have related to the acquisition or rendition of professional legal services and must have retained a professional legal character.

*International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 185 (M.D.Fla. 1973); *see, Duttle v. Bandler & Kass*, 127 F.R.D. 46 (S.D.N.Y.1989).

■ Finally, the attorney client-privilege must be asserted with respect to each question sought to be avoided or document sought to be withheld, "rather than as a single, blanket assertion." *Rockwell Intern*, 897 F.2d at 1265; *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir.1982); *Schmidt*, 343 F.Supp. at 446; *see United States v. First State Bank*, 691 F.2d 332, 335 (7th Cir.1982).

■ The government appears to invoke the attorney-client privilege as to both Ms. Coven's presence at a specific meeting and as to unspecified instances in which DOJ attorneys attended NSC or Presidential meetings. This blanket invocation contradicts the rule that the privilege must be asserted only with respect to a single question or document at a time. Further, the government has alleged no facts supporting the conclusion that at relevant meetings either Ms. Coven or other DOJ attorneys engaged in attorney-client communications with executive officials which were both confidential and necessary to enable them to obtain informed legal advice. Indeed, the government did not even identify the factors which render attorney-client communications confidential. Thus, the government has failed to show that the presence of Ms. Coven or other DOJ attorneys at the meetings in question provide grounds for limiting the scope of Petitioners' depositions of Rees and Schwartz.

Having considered all of Respondents' arguments for limiting the scope of inquiry in the Rees and Schwartz depositions, the court finds no basis for doing so. Accordingly, Respondents' motion for a protective order limiting the scope of discovery depositions is denied. An appropriate order will be issued.

### *ORDER*

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

(1) Respondents' motion for a protective order limiting the scope of discovery depositions is DENIED;

(2) If Respondents' wish to re-assert the state secrets and/or deliberative process priv-

ileges in a proper manner, they must do so in accordance with the court's accompanying memorandum within twenty (20) days of the date of this order;

(3) If Respondents' fail to re-assert the state secrets and/or deliberative process privileges within twenty (20) days of the date of this order, those privileges shall be deemed waived.

